The next case is number 12-7138, Robert Prinke against the Secretary of Veterans Affairs, Mr. Stoltz. Robert Prinke Good morning, Your Honors, and may it please the Court. The Veterans Court committed a legal error in this case and it failed to ensure compliance with plain language 38 CFR. Section 3.105D, when it found in April 2006 addendum, provided sufficient evidence that VA's previous award of service connection was clearly and unmistakably erroneous. Legal sufficiency is a question of law where it's here. The application, I'm sorry, the question is whether the evidence is capable of meeting an applicable legal standard. Here that standard is articulated in plain language. How do you take the CAVC to have interpreted 3.105D? Because you need to come here with a challenging and interpretation of a regulation. What was the CAVC's interpretation that you object to? I think the CAVC's interpretation is, in its discussion of 3.105, it interpreted that regulation when it found that even when evidence is disputed, that that can rise to the level of clearly and unmistakably, a clear and unmistakably erroneous award of service connection. I think that the plain language of 3.105 was explicitly ignored by the Court of Appeals for Veterans Claims. I know that they tried to get around an interpretation of 3.105, but I do think that they had to I thought that was your argument you presented to the CAVC, but I didn't really see that argument in your brief here. That was your point number one in front of the CAVC. If you look, for example, at the CAVC decision at page 6 in the record, this is the sentence that puzzled me. To the extent that Prachy asserts that the 2006 Regional Office Division failed to comply with 3.105D, yada, yada, yada, we can't consider that argument. It's a puzzling sentence. I understand. Well, they said, well, we can't review something that was done. They treated you not to have made that argument before the BVA. If you look at the government's brief in your file, you'll see that clearly back at supplemental appendix 29. It's at supplemental index 28 is where you made the argument that the RO failed to adjudicate the claim properly. Instead of using a Q standard, they used an all-evidence standard, right? Yes, Your Honor. And then on page 20, the next page, you say, well, the board made the same error. Yes, Your Honor. Well, apparently the CAVC overlooked that when they wrote that sentence to which I just adverted saying we can't review it because you have preserved that argument for them. But I didn't see anywhere in your brief that you preserved that argument for us. Where in your blue brief do you make the argument that the standard Q was not applied, but instead an all-evidence test was applied? I think that Your Honor is correct, unfortunately, that we did not explicitly make that argument. But I think that it reads through both the blue brief and the gray brief because what we are challenging the entire time is the sufficiency of this medical evidence. And so I think it would take for granted that on appeal here, and this could possibly be a mistake. But if the error was using the wrong law, you would have a vacate and remand to have them use the right law. You don't ask for a vacate and remand. You ask for an award of us to reestablish service connection. In order to reestablish service connection, we would have to conclude that Dr. Fleming's opinion was legally insufficient to support severance under Q. That is to say, we would have to examine the underpinnings of Dr. Fleming's award. We wouldn't have to do that on your first argument. I mean, I was puzzled by that sentence in the CAVC opinion. It didn't take me very long to figure out the answer to it when Mr. Hockey kindly gave us your brief to the CAVC. But I didn't see you preserving that argument here. It seemed to me you made two arguments. One is that the sufficiency of a medical opinion is not a fact question. It's something that we can independently review, A, on its own bottom. And, B, if we can't do that, this is one of those rare cases where there's a violation of due process, and therefore the constitutional fact doctrine lets us do the same analysis on Dr. Fleming's opinion. Those were the two issues I thought you brought us. Yes, Your Honor. But on reply— Are you—are you—are you—what are you doing? This is like Mr. Carpenter. What's happening to the appeal that's in front of me? I mean, I understood your argument that you thought the R.O. hadn't really understood correctly that they had a Q case here instead of an initial claim. I understood that, and I understood you made that argument well and believed to the CAVC, and they missed it. But I didn't see you presenting that to us. Well, as we read in our reply brief, Your Honor, and I— Well, what do you want? I mean, your request for relief calls for us to say that it was not Q, that there was no basis for severing this distinguished veteran's service connection. That's correct, Your Honor. And to do that, we would have to slice through Dr. Fleming's opinion because that's what the board relied on, correct? And that's what the CAVC relied on. I don't think that you do, Your Honor. I don't think that you need to slice through Dr. Fleming's opinion. I think that if you follow through the regulation, if you follow through the plain language of the regulation, this and the relief that we seek is still appropriate because on the evidence that is in this record, it's legally insufficient, and we did make legal sufficiency arguments throughout our claims, both at the court—at the Veterans Court and in front of this court, Your Honor. And because there's no question that— well, Mr. Franke asserts that there's no question under 3.105d that there is no sufficient evidence here for the regional office, the board, and then the Court of Appeals for Veterans Claims as this claim has always been on appeal. Well, the adjudicators disagree with you. The board disagrees with you, and so does the CAVC. They thought that Dr. Fleming's opinion, I suppose mainly because she cited the low C-cell production, I can make that connection as a doctor and tell you that this diabetes is not herbicide-related. And that's what she said. That opinion may be wrong. It may be wrong. But as a matter of law, the opinion is insufficient. The opinion may be wrong, the opinion may be right, but it's a matter of law. As you probably know, we've held in a Q setting, Belcher against West, where the question was whether there was there, whether there was clear and unmistakable error in rebutting the presumption of soundness. And we all agree that the Q standard is the same wherever you're applying it. We held that we had no jurisdiction to review the underlying facts as to whether or not the presumption of soundness on the medical record there had been rebutted. It seemed to me that we've already decided in a Q setting that factual underpinnings are beyond our jurisdictional reach. Factual underpinnings are certainly not on our part. That's why I asked originally, what was the interpretation? I thought you were going to tell me that you read the CABC to construe 3105D to allow severance where there's no evidence. Well, they're allowing severance... No supporting evidence. They're allowing severance where there is a weighing of evidence, and they can't do that. There's already evidence. There are three different times that Mr. Prinky has been diagnosed with diabetes in a lifestyle, too. And what the court is doing, what its error really is here, what its error really is here is it's allowing a weighing of evidence to rise to the level of clear and unmistakable evidence. And a weighing of evidence can't possibly be clear and unmistakable evidence because it's weighing. And so I don't... As you pointed out to me, that argument was not the one you made in your brief, but you're making it now. And I apologize, Your Honor, that it was not clear in our pleadings. Well, it's not very fair to your adversary. Because it's the court's holding and because what we have challenged in this court is the sufficiency of the evidence, I don't think that it is a stretch to hone the argument here to more specifically answer Your Honor's questions and to more fully articulate a response to the government's pleading. Because I do think that still it goes back to our pleadings that it's a question of sufficiency here. All right, let's hear from the government and then we'll save a lot of your time, Mr. Stoneman. Thank you. Mr. Hawkins. Thank you, Court. Well, I had some responses to the arguments that we prepared to respond to, which I think Judge Clevenger has talked about initially. In the briefs, the issue was whether or not Mr. Prinkman could revoke this court's jurisdiction under either the legal sufficiency case law or a due process case law. And I think Judge Clevenger has indicated in this court's decision in Walser that identified those situations in which this court would review legal sufficiency as a matter of law. Walser wasn't one of them. Well, we've got a second. Do you agree with me, Mr. Hawkins, that the CAVC thought that this argument that an independent review as opposed to a peer review had been performed by the regional office? This is at page six of the opinion where the CAVC is rejecting, I take it. What was argument number one made below? It does, if you're referring to the... They're saying, well, I understand if the RO makes a mistake, there's nothing we can do about it. We only can review RO mistakes that are filtered through BBA opinions. That's what they were saying. Now, if you look at supplemental appendix that you very nicely gave us, 28 and 29, this is the brief that was presented by Mr. Trinke to the CAVC. And you'll look on page 28 that his lead argument is that the RO failed to adjudicate with this cue. Instead, it was doing a balancing of the evidence. Now, that's what the CAVC was referring to. Now, if you look over on the next page, page eight, in the final paragraph, he's saying the board compounded the error when it did the same thing. Page... Right. That's on page 29 of the supplemental appendix, on the first sentence in the last paragraph. Turn over to the next page, page 30, in the final paragraph of the page, and you'll see the sentence, the board failed to observe actable law concerning the standard of service connection. So clearly, Mr. Trinke was arguing to the CAVC that the board, as well as the RO, messed up in not applying a cue. Right? It does appear to be that. So it would appear to me that the language on page six of the opinion saying, I'm going to reject, I don't need to adjudicate that issue, is a mistake. So if we were to decide that Mr. Trinke had preserved this argument for appeal, even though he didn't phrase it this way in his brief, wouldn't it seem to you that a vacating or remand would be proper to tell the CAVC that it didn't respond to a legal argument presented to it by Mr. Trinke? So the answer, I think, lies in the definition of wait or way, because if you interpret what was being argued as that in any clear and unmistakable error examination, it would be improper to consider the evidence before the board to reach that position where reasonable minds could not differ. I hear what you're saying to me, but isn't that going to be the argument in front of the CAVC if the case were to go back? It could be that argument. You're going to argue, well, he's just wrong. You would agree with him that if the board and the RO weighed evidence like an initial claim instead of doing a Q analysis, that would be the wrong thing, but you're saying that's not what happened here. I think, well, when you do a Q analysis... But we can't make that decision. This gets back to the determination of what is wait. Somebody at some point has to make a determination that the evidence overwhelmingly supports a position. In order to get to that point, decision-maker's mind, they have to consider what's before them, whether it's positive or negative evidence. And so when someone suggests that a clear analysis does not encompass an examination of the record to determine whether reasonable minds could not differ... I hear you talking. It just seemed to me that that one sentence in the CAVC opinion, which puzzled me for a couple hours until I read your supplemental opinion, it seems to me that they thought a legal argument was being presented to them that they didn't feel they had the authority to address. Well, the sentence, accordingly the court also finds that Mr. Prinkney fails to demonstrate the court relied on an improper standard of review, might suggest that they disagree and that the Q examination, if you will, was followed here. It just didn't go the way that Mr. Prinkney would hope. What do you take to be the appeal here? What argument were you going to make? Well, I mean, the appeal is one that's not necessarily new to us or the court, and that's where someone below determines that the facts have to be read a certain way and the claimant is not happy with that reading and so needs to try to get some other reviewing body to look at it. And given the prohibition of fact review by 7292D, they come up with alternative arguments like the ones that are presented here that... Well, in particular medical evidence. Hasn't it been the position of the department that medical evidence raises a question of fact that's beyond our jurisdictional reach? Yes. I mean, if you were to hold otherwise respectfully, then there wouldn't be a 7292D in VA cases because... And so if Escobar had been decided precedentially, then there wouldn't have been an appeal here. I would... Well, first of all, if Escobar had been issued precedentially, we would have cited Escobar or brought it to your attention through Rule 28. But yes, knowing counsel for Mr. Prinkney, I suspect... What do you do with the body of law? Belcher on cue, what do you do with the body of law on the duty to assist? We have precedential opinions that say... And if you're arguing that there was insufficient medical analysis conducted constituting a failure of the duty to assist, we've precedentially said we can't greet that argument. Discord. I said that. We've said that both with duty to assist and we've said it with cue. Correct. On medical evidence. Doesn't that tell you what the answer ought to be? The answer is that Congress has provided a mechanism by which individuals can obtain the relief that Congress has not delegated to this court, and that is with the Veterans Court. And that argument was made and it was rejected. And so, unfortunately, that is, for that particular type of argument, the final decision. How do you understand Horne and Neves Rodriguez for what's happening downstairs at the Court of Veterans Appeals? Well, Horne has this de novo language in it, but then in the same sentence that it identifies the de novo language, it says, the court reviews de novo board decision concerning the adequacy of the evidence offered to rebut the presumption of soundness while giving deferential treatment to the board's underlying factual findings and determinations of credibility, which it must under its statutory authority. It has to. It reviews things for clear error. What I believe was underlying that language in Horne was a suggestion by somebody that, probably the secretary, that they were limited to the board's factual findings were self-evident or whatever, and the Veterans Court was reminding... Well, that was a case where somebody just marked X on a box, and the X on the box led to a legal conclusion. And there was no rationale behind the X on the box. And they said, well, in this kind of a case, we're going to make an independent assessment of what we think the gist of the conclusion of the evidence shows. So, I mean, what's puzzling about Horne is it's followed only a few weeks later by Acevedo. And in Acevedo, a three-port panel, including one of the judges that sat on Horne, said whether medical opinion is adequate to finding a fact. So, do you understand Horne to be an example of where the CABC is saying to itself, where we think it is necessary, we will step aside from ordinary clear error review on fact to look independently as part of our duty as the keeper of the keys and assessing facts in CABC cases? So, it may be an attempt by the court to read the two requirements of 7261 together, which one being that they review for clear error, but the other being that they base their decision on the entire record. And so, in trying to describe the second area of their review to the entire record and not being limited necessarily to the factual record that supports the findings below, I suppose that might be a way to read Horne's language, which would seem to be inconsistent when someone uses the term de novo and deference in the same sentence. Well, if you assumed in this case that Dr. Fleming's final contribution to the record, the 72 word, whatever it is, it's at page 54 of the record, let's assume there had been no reference in there to the minimal beta cell function. It simply had been a conclusion. The veteran doesn't have DM2. The veteran has diabetes secondary to the pancreatomy and alcohol abuse, period. That would bring the case a little closer to Horne, wouldn't it? It might bring the case... Yeah, it might bring the record closer to Horne in the sense that to the extent the board solely relied upon 74 words. No, just on a conclusion. The rationale, it seems to me, that convinced the adjudicators, the board, and the CBC was the fact that Dr. Fleming was pointing to the virtual minimum production of the pancreas, of the insulin. But if there had been no reference to that, it would seem to me that it would almost be... The CABC might well have said this is a Horne type case because there's not enough data points in this record to give us the confidence that the medical decision was correct. That might be the case, Your Honor, in which I suspect what would have happened would be the context of the entire claim would have been developed further in the language of the adjudicator because it is their decision that's being reviewed for purposes of compliance with 3.105, not the medical professional necessarily, and that in that context, and we have a situation here where the original service connection was based upon a presumption given the absence of any other evidence indicating a cause for the diabetes mellitus, and then what you have is subsequent to that this development of the record reviewed by the medical examiner in reliance upon the operation removing most of the pancreas. So perhaps you'd have a situation where, in trying to explain why they looked at these other things... Michael, I'm just having trouble. I mean, if the rule is that this court, as the legislative history of our jurisdictional statute suggests, if we read it in 4A, we're supposed to be held at a complete distance from the factual assessment of the record and that's the duty of the independent CAVC to be the protector. So if that's really true, then if Horne and Neves Rodriguez suggest that the CAVC takes that responsibility very seriously and they are going to be scrubbing, even down to a de novo review in some cases, that seems fine to me. That doesn't seem inconsistent necessarily with us not being able to review facts at all. I would agree that that would be consistent. I just wanted a question. I'm sorry to use up so much of my colleague's time. You graciously gave an andino argument to your adversary here. I can't remember what page in the brief it is. You say, well, you think maybe the veteran is talking about andino, and so therefore I'll talk about it, right? Andino is our case that says under 3.105D, at least where you have a change in diagnosis as the basis for severance, you have to review the whole record. And in andino, there was quite a lot of record that was adverse to the veteran. I mean, it was in his favor. There was one article, one item that was adverse. They relied on that and reversed it, right? In this case, there is this CAT scan from 2000, 2001, something like that, that showed the condition of the pancreas after the surgery. And that CAT scan was not in front of Dr. Flemming. 2009, it got in the record. So the question is, is there an andino violation here? No, because I think as we expressed in our papers, the substance of what was contained in the missing document was contained in the record. In other words, there was a summary description of what happened and a missing report simply provided evidence or additional evidence of that, and that the decision-maker in this case, or not only the decision-maker, but the evaluative medical professional... Well, your adversary tells us that's not the whole... Once again, pushing all these facts in front of us. They say, well, if Dr. Flemming had known how the operation was performed, which organ they went through to get there, they would know something more about the ideology of the disease, which is possible. Is it not? It's possible. I'm not sure it's possible, frankly. I don't have the medical expertise to determine whether or not that is possible, given the context of this case. Now, the andino argument, as I understand it, was not presented to the CAVC. Let me look at the data. I didn't see it anywhere in the brief. We're getting into details, but I think it's not disputed that the claims file was not complete. And it isn't this. It seems to me that in similar events that the VA has requested a remand in order to assure that whatever decision is made is made on a complete record without decision of whether there was cue along the way. Does that fit the experience? We have done that, Your Honor, where it became evident after the additional adjudicators issued a decision and we thought that maybe the record needed to be reconsidered. I believe in this case, at the time of the adjudicators' decisions, they were aware of the alleged missing document and addressed that in their decision. So this would not be one of those situations where in the past we had... Well, they were aware of the fact that it had been an operation and they were aware the operation had removed substantially all the pankers, leaving the head in view. But anything else about what was in the report of the CAT scan, there's no certainty that that additional information was in front of the adjudicators, correct? I was under the impression that they were, and I could be wrong about this, but I was under the impression that by the time the adjudicators, at least the Veterans Court, issued its decision, they were aware of this missing report, but I may be wrong about that. On page 7, it says, the radiology report from May was not part of the claims file, and so I thought I read that correctly. Until when? I'm afraid of page 7. Was it in front of the board or not? The Veterans Court. At least by the Veterans Court. It was before the Veterans Court. It seemed not disputed that it wasn't before the board, that it reached the Veterans Court, that it was not before the medical experts whose conclusions were reviewed by the Veterans Court. And isn't this the question of law or due process insofar as it reaches us is to assure that the procedures are as complete as appropriate? But I believe, Your Honor, that it's incumbent upon Mr. Prinky before the Veterans Court when he suggests that a particular document wasn't provided to the RO that he has to provide an explanation as to how that was harmful. And in this case, the Veterans Court, on page 7 of the appendix attached to the blue brief, addresses the issue. So no, I would say there's no due process concerns here. He raises an issue, he has an opportunity to discuss it, and it's addressed by the adjudicator. So at this stage, we're second-guessing that adjudicator's determination, but that doesn't rise to the level of a due process violation. Again, we would suggest that... The blue brief didn't present this argument. Well, I don't see it clearly, and even if it did, I would suggest that it's asking this court to review application of law-of-fact. All right, let's hear from Mr. Stokes. Thank you, Mr. Adams. Thank you. Your Honor, I think the discussion here this morning highlights the error in the adjudication below. What the court essentially did, the Veterans Court essentially did, was it made a determination, even a weighing of evidence, can rise to the level of clear and unmistakable evidence that an ROS severance was proper. Can you just address this very particular question, which I may not be stating right? Is there some important piece of evidence that was submitted in the proceedings below after the last time the Board had the case? There is, and I can get the dates. The Board of Veterans' Appeals in January 2009 at Appendix 98 remanded to go and get more evidence, even after it had gotten the 2006 addendum. It associated that evidence, it clarified more of what the pancreatectomy was when the Veteran underwent that. And then it went back to the Board, right? And then it went back to the Board. So the full case report on the pancreas operation was in fact in front of the Board in 2010? It was in front of the Board in 2010. It was never in front of the examiner. You mean the medical doctor? The medical, the endocrinologist. The subject of the 2006 medical note. And the adjudicator, the Board, had that in front of them? The adjudicator had it in front of them in 2010, and my opponent is correct that the court did discuss Well, and also that Dr. Fleming knew that there had been a pancreatic operation and that substantially all the pancreas had been removed. That was in the claims file. Yes, yes, that's correct. She knew that. She did, well, allegedly, yes, she did. No, no, it's in the claims file because it's referred to by the nurse. Right, right. Yes, yes, Your Honor. So what's missing? I mean, Fleming knows that there was a pancreatomy and substantially all of the pancreas was removed. Yes, Your Honor. So what, and we know now that the actual report on the scan was in front of the, was in the record 2010. In 2010, yes, Your Honor. Okay, so what's, where's the, what's the flaw? What's the problem? The flaw is still, that's almost a side issue. The main flaw is still the sufficiency of the evidence here to find that there was, that it was clearly and unmistakably erroneous to award service connection. That's still the error because at the end of the day, no matter what, we have all these side notes. Okay, so you think she should have had the entirety of the CAT scan analysis. So she would, as I said earlier, I believe you made an argument that what that would teach is that the avenue of attack that was used in order to get at this particular problem in the pancreas would, was, you believe, undercuts the notion that this was alcohol abuse as opposed to chemical exposure. It also doesn't comply with the, it also, the plain language of 3.105B requires a review of all the relevant evidence. That's when there's a change in diagnosis. Yes. But Mr. Cockey says that the fact, the board said, whatever the nomenclature, so that the change in diagnosis, it would have been the same answer from her either way. So did she change her diagnosis or not? So there's an implicit finding of, of, of hormone therapy, I think is what the government is, what Mr. Hockey is, is advocating here today. But again, it's, it's getting bogged down a little bit too much in the details, what happened, a little bit too much in the details. Really, the overall problem is still the sufficiency of the, of the evidence. No matter what, whether or not she, whether or not the endocrinologist knew about everything that needed, that she needed to know about, about the pancreas. I, like Mr. Hockey said, I'm not a doctor. I don't know. I don't know if it would have made a difference in what she ultimately said. But I do know that under the plain language of the regulation, the RO can't just sever service connection without clear and unmistakable evidence. And there is no clear and unmistakable evidence, putting aside whether or not it's harmless, the pancreas condition. Her reasoning, as was pointed out in our blue brief, her reasoning is, is all of, I think, 74 words long, such as it is, if you want to call it reasoning. And that can't possibly arise to the level of clear and unmistakable error in the RO's decision. Not to mention the fact that, and this was not articulated well in the brief, it was not, but I think it does read through in our argument that the court is essentially saying, and if this decision is allowed to stand, what they basically told Mr. Prinky is, even in a weighing of evidence situation, because there are many diagnoses of diabetes myelitis type 2 in this case, even in a weighing of evidence type of situation, that is enough for clear and unmistakable error. And that's just not what the law says. And so we would ask for relief on that point. Okay. Any more questions?  Okay, thank you, Mr. Bates. Thank you, Your Honors.